## In re CRAZY EDDIE SECURITIES LITIGATION.

### Nos. 87 CV 0033, 91 CV 4450 and 90 CV 3181.

United States District Court, E.D. New York.

Nov. 8, 1995.

Sirota & Sirota, New York City (Howard B. Sirota, of counsel), for plaintiffs.

Shearman & Sterling, New York City (Irene Chang, Joseph T. McLaughlin, of counsel), for defendant Peat Marwick LLP.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

In an Report and Recommendation dated August 11, 1995 Magistrate Judge Marilyn Dolan Go recommended that the court allow late claims (1) mailed on or before September 30, 1993; (2) mailed late due to lack of notice on or before August 11, 1995; (3) delayed by factors beyond the claimants' control; or (4) "set in motion" promptly after notice was received. Magistrate Judge Go further recommended that the court reject late claims mailed after September 30, 1993 without a letter of explanation or where the only excuse was that the claimant was away for a short time around the filing deadline.

No party filed objections. The court approves and adopts the Report and Recommendation.

So ordered.

## REPORT AND RECOMMENDATION REGARDING LATE CLAIMS

GO, United States Magistrate Judge:

All remaining matters in this consolidated class action have been referred to me for supervision of post-settlement issues or, in the case of dispositive matters, to report and recommend. The class plaintiffs have moved for an order allowing the claimants who failed to file timely proofs of claim to participate in the distribution of settlement funds pursuant to a settlement approved by this Court on June 13, 1993. For the following reasons, I respectfully recommend that all of the late claims be allowed or rejected, as specified in the schedule of Allowed and Rejected Late Claims annexed hereto.

### BACKGROUND

Many of the facts pertinent to this motion are set forth in the decision of the Honorable Eugene H. Nickerson dated June 11, 1993 approving the Stipulation of Settlement dated March 22, 1993, as amended on June 7, 1993, (the "Settlement") settling all the claims of the class action plaintiffs against all defendants, except Eddie Antar. *In re Crazy Eddie Securities Litigation,* 824 F.Supp. 320 (E.D.N.Y.1993). Familiarity with this

decision and prior decisions in this action is assumed.

Under the terms of the Settlement, the settling defendants agreed to establish a fund of $42 million for payment of class claims, attorneys' fees and expenses. Class members of the submitting class would receive approximately 6% of the amount of their losses, a percentage which would vary depending on the amount of claims made and attorneys' fees award. *Id.* at 323. Any amount not distributed would revert to the settling defendants. Settlement, ¶ 18(f).

Paragraph 21(b) of the Settlement required that all proofs of claim must be filed by a date specified in a notice of the proposed settlement of class actions, unless extended by agreement of the Plaintiffs' Executive Committee and counsel for the Settling Defendants. By order dated March 30, 1993, Judge Nickerson scheduled a hearing to determine the fairness of the Settlement and directed, *inter alia,* that the deadline for submitting proofs of claim be 90 days after the hearing. The actual notice of the proposed settlement (the "Notice") and form proof of claim sent to class members established August 25, 1993 as the deadline for submitting proofs of claim, requiring all mailed proofs of claim to be postmarked no later than August 25, 1993. *See* Exhibit B attached to the affidavit of Joseph T. McLaughlin dated November 21, 1994 ("McLaughlin Aff.") in opposition to the instant motion.

The Notice and form proof of claim were mailed to class members by April 30, 1993. *In re Crazy Eddie,* 824 F.Supp. at 324. Besides widespread media coverage of the Settlement, class members were notified of the agreement by notices published in the national editions of the New York Times and Wall Street Journal advising them of the deadlines for objecting to the Settlement and filing proofs of claim. *Id.* After the court approved the settlement on June 11, 1993, the Plaintiffs' Executive Committee apparently sent a further notice advising class members of the approval. *See* Exh. E to McLaughlin Aff.

The Claims Administrator received over 13,000 proofs of claim, of which 257 valid

claims were postmarked after the August 25, 1993 deadline ("late claims"). *See* Affidavit of Brad Heffler dated October 28, 1994 ("Heffler Aff.") at ¶ 4 attached as Exhibit A to the affidavit of Howard Sirota dated October 31, 1994 submitted in support of the instant motion. The amount of "recognized losses", as defined by the Settlement, declared in valid and timely proofs of claim totaled $231,212,431.41 and the valid late claims included recognized losses of $9,890,000. *Id.*

Copies of the letters of the late claimants explaining why they did not file their claims on time are attached as exhibits to the Heffler Aff. Defendants agreed on the record at oral argument to accept the veracity of the explanations contained in these letters.

By letter dated December 16, 1994, plaintiffs' counsel, Howard Sirota, Esq., submitted a list containing the names of all claimants with valid late claims and the postmark date of their submissions. The vast majority of the claims (187) were submitted within two months after the filing deadline, 60% (158) of which were submitted within the first month.

## DISCUSSION

■ The determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court. *See Zients v. LaMorte,* 459 F.2d 628, 629–30 (2d Cir.1972); *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1396, 1417 (E.D.N.Y.1985). As the Second Circuit explained in *Zients,* "a court supervising the distribution of a trust fund has the inherent power and duty to protect unnamed, but interested persons." 459 F.2d at 630. *See also Alexander v. Chicago Park Dist.,* 927 F.2d 1014 (7th Cir.1991), *cert. denied,* 503 U.S. 905, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir.1977).

■ Accordingly, this court must make its determination after "taking account of all relevant circumstances surrounding the party's omissions." *Pioneer Inv. Services v. Brunswick Associates,* 507 U.S. 380, 394–95, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).

The Supreme Court in *Pioneer* observed that such an equitable inquiry cannot be limited to consideration of the movant's culpability and reasons for delay. *Id.* at 395, n. 13, 113 S.Ct. at 1498, n. 13. Thus, any strict requirement that a late claimant must demonstrate "good cause" for delay in filing a proof of claim in a class action settlement, *see In re Gypsum,* 565 F.2d at 1127,[1] is clearly inappropriate when the court is exercising its equitable power in this context.

■ Although *Pioneer* dealt with interpretation of Rule 9006 of the Federal Rules of Bankruptcy Procedure which permits late filing of proofs of claim upon a showing of "excusable neglect," the *Pioneer* analysis is clearly applicable here. *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994) (*Pioneer* applicable outside the bankruptcy context). Here, as in *Pioneer,* the proper inquiry is necessarily an equitable one. The role of bankruptcy courts in supervising Chapter 11 reorganizations is not dissimilar from the role of the Court in this class action—both courts are "entrusted with broad equitable powers to balance the interests of affected parties . . . ." *Pioneer,* 507 U.S. at 389, 113 S.Ct. at 1495 (citation omitted).

Moreover, since the deadline for filing proofs of claims was first set by Judge Nickerson in his order of March 30, 1993, the instant motion is essentially a request for an enlargement of time with respect to a court ordered deadline. It should thus be considered under the "excusable neglect" standard pursuant to Fed.R.Civ.P. 6(b)(2).

■ As the Supreme Court in *Pioneer* emphasized, "excusable neglect" under Rule 6(b) is a "somewhat 'elastic concept' and not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer,* 507 U.S. at 392, 113 S.Ct. at 1496 (quoting 4A C. Wright & A. Miller,

Federal Practice and Procedure § 1165, p. 479 (2d Ed.1987)). Since "neglect" ordinarily also encompasses inadvertence or negligent omission, a court should not automatically rule out delay caused by such conduct, but rather, must examine whether the conduct is "excusable". *Id.* at ——, 113 S.Ct. at 1498. A court should therefore weigh "all relevant circumstances" in determining whether to permit a late claim, including the following factors:

> the danger of prejudice to [other parties], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498.

■ The question of prejudice to other parties lies at the heart of the dispute in this case. Since the defendants have a reversionary interest in the settlement funds, the exclusion of the valid late claims will substantially increase the funds returned to defendants from approximately $12 million to over $12.6 million.[2] While not an insubstantial sum, the $600,000 represents 1.4% of the maximum settlement amount that defendants agreed to pay.

Defendant KPMG Peat Marwick LLP argues that the Settlement makes absolutely no allowance for late claims; thus permitting late claimants now to participate in the Settlement would violated a negotiated term in the Settlement. *See In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 144–45 (2d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987) (a district court should generally not modify the terms of a settlement agreement except in limited circumstances). However, I cannot conclude, from a review of the record before me and the terms of Settlement, that the August 25,

---

1. This standard apparently has been followed by several other courts. *See Grace v. Detroit,* 145 F.R.D. 413, 416 (E.D.Mich.1992) and cases cited therein.

2. The amount of the Net Settlement Fund for payment to claimants is $25,800,000. By my calculations using the formulas in paragraph 18, if all the late claims are excluded, the authorized class claimants will receive approximately 5.68% of their recognized losses, for a total of approximately $13,100,000. If all the late claims are allowed, the authorized class claimants will receive approximately 5.71% of the their recognized losses for a total of approximately $13,750,000.

1993 deadline is an integral part of the bargain. Other than stating that the deadline for submission shall be a date specified in the proof of claim, Paragraph 21(b) does not provide any guidance for determining the deadline. The form Proof of Claim attached as Exhibit 4 simply contains a blank where the date should be inserted. Paragraph 21(b) also permits the time period to be extended by the parties and bars class members who fail to file a timely claim "from receiving any payment from the Settlement Fund *(except by Order of the Court)*" (emphasis added). The anticipated flexibility in processing claims is also apparent in paragraph 21(d), which permits the Claims Administrator to give class members with deficient claims an opportunity to cure, apparently without regard to the submission deadline.

The only document directing a deadline for submission is the court's order of March 30, 1993, which set a date for the fairness hearing and required the deadline for submitting proofs of claim to be 90 days later. This order presumably was proposed by the parties in their joint application for approval of the Settlement, as required by paragraph 20, a submission made *after* entry into the Settlement. Viewed in the context of the Settlement agreement and proceedings in this case, defendant's claim of prejudice is reduced simply to a question of money, rather than reliance on the underlying negotiation process.

A second factor for consideration is the potential impact on judicial proceedings. Defendant KPMG argues, and courts have certainly agreed, that "a cutoff date is essential and at some point the matter must be terminated." *In re Gypsum*, 565 F.2d at 1127; *see also In re Wirebound Boxes*, 993 F.2d 152 (8th Cir.1993). While a bright line approach is appealing, judges in the Second Circuit generally have not considered the certainty afforded by a rigid rule to be of paramount importance. *See Zients v. LaMorte*, 459 F.2d at 629–30; *Duban v. Diversified Mtg. Investors*, 87 F.R.D. 33, 43 (S.D.N.Y.1980); *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. at 1417; *see also In re SmithKline Beckman Corp. Secs. Litig.*,

No. 88–7474, 1992 WL 111381, *1–2, 1992 U.S. Dist. LEXIS 6778, *3 (E.D.Pa. May 15, 1992) (Broderick, J.).

The submission of late claims has had little impact on judicial proceedings in this case, since much of the court's time has been taken up with other matters. Certainly, that is frequently the case in class actions involving a large number of members and complex issues. In fact, in the most recent edition of the Manual for Complex Litigation, there is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement. *Id.* (Third Edition 1995) § 30.47 at 248 ("Adequate time should be allowed for late claims before any refund or other disposition of settlement funds occurs.").

The last two factors focus on the conduct and motive of the claimants. Good faith is not disputed, so the only issue is the reason given for tardiness. The persuasiveness of the reason may vary depending on the length of the delay. The various categories of explanations are discussed below and weighed against other pertinent factors.

Many of the late claimants, particularly the ones who mailed their proofs of claim within one month of the August 25, 1993 deadline, allege, *inter alia*, postal error in delivering the claim, a failure on the part of brokers to send the necessary information, problems in locating records, and simply being away. Since notice of approval of the Settlement was not sent until after June 11, 1993, the period between the notice and the August deadline fell during the summer months when people are more likely to be away on vacation, including brokers who may have originally received the notices for forwarding or who may have necessary information for completing proofs of claim.

The problem that claimants would have in submitting appropriate documentation with the proofs of claim was recognized in the Settlement, which provided allowance for "a reasonable time for deficiencies which are curable to be remedied." However, the Notice of Claim did not advise claimants of the right to cure and the importance of simply filing a claim within the original deadline, even if the claim were incomplete. More-

over, there is no compelling reason for observing a strict deadline on the facts of this case. The equities weigh substantially in favor of leniency in allowing late claims, and, for these reasons, I recommend that all valid proofs of claim mailed on or before September 30, 1993 be allowed.

■ Defendant asks this Court to distinguish between institutional investors and non-institutional investors and hold institutional investors to a higher standard of conduct. Accordingly, I specifically address two claimants submitting claims by the September 30, 1993 extension date I recommend. M.D. Sass Investors Services ("M.D. Sass") filed sixteen claims (20150, 20152, 20153, 20154, 20157, 20157, 20159, 20160, 20161, 20164, 20165, 20167, 20168, 20169, 20170 and 20173) approximately two weeks late. M.D. Sass alleges that it was given an extension of time to file by Howard Sirota, Esq., plaintiff's counsel, and that it filed late due to a change in personnel and the large number of claims. While in some circumstances it may be appropriate to charge a professional investors' service, which should be familiar with the logistics of processing claims, with greater accountability than individual investors, such a rule in this context would serve to preclude all institutions from offering almost any explanation for delay, thereby eviscerating the "excusable neglect" standard as to them.[3] Also weighing in favor of allowing these claims is the fact that M.D. Sass would not directly bear the loss of a contrary ruling. Given the minimal delay and the personnel problems encountered in dealing with the large number of claims, the delay here is certainly excusable.

■ Similarly excusable are the seven claims filed by Society National Bank (20183, 20184, 20185, 20186, 20188, 20189, 20190) approximately three weeks late because it was in the process of merging with Ameritrust Company National Association. Since a merger is one of the most significant and uncommon events to affect businesses, neglect to file proofs of claim which are not part of a bank's ordinary functions is excusable.

■ A number of claimants stated that they were late because they did not timely receive the proofs of claim or know about the Settlement. This is understandable given the substantial length of time that elapsed between the start of the class period on September 13, 1984 and the time the Notice was sent out in April 1993. While the defendants are correct that they should not be charged with the onus of locating class members, that is a different matter from whether the failure of a class member to submit a timely claim because of a lack of notice constitutes "excusable neglect." Clearly it does under *Pioneer*. Most of the claimants in this category who filed well past the deadline seemed to be relatively unsophisticated investors whose small investments in Crazy Eddie securities represented significant amounts in their portfolios. Given the negligible prejudice to defendants with respect to these few claims, I recommend that all claims filed due to lack of notice be included. However, as a matter of judicial administration and fairness to all parties, even this concern for protecting class members must give way to finality. I therefore recommend that August 11, 1995 be the final deadline for acceptance of such proofs of claim and that all claims postmarked after that date be disallowed.

■ Last, I recommend that other late claims submitted after September 30, 1993 with explanations other than failure to receive notice be treated as follows. I recom-

---

3. Greater flexibility in treatment of claims irrespective of the status of the investor is warranted precisely because this action is brought as a class action on behalf of an estimated 50,000 members. Although counsel for the plaintiff class has attempted to address the concerns of individual class members in this motion, counsel's primary role has been to represent the class as a whole. None of the claimants has directly appeared in this action through counsel or otherwise, nor has any apparently retained counsel in this matter.

Thus the higher standard of conduct expected of parties represented by counsel and, likewise, by institutions who in most other court proceedings would have counsel, should not be imposed here. Cf. *Pioneer*, 507 U.S. at ——, 113 S.Ct. at 1499; *U.S. v. Hooper*, 43 F.3d 26, 29 (2d Cir.1994) (attorney ignorance of rule not excusable where attorney represented client before the court in all prior proceedings): *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994).

mend that all claims mailed after September 30, 1993 where the claimant failed to submit a letter of explanation be disallowed since there is no way of determining whether the tardiness is due to "excusable neglect." Claims where the only excuse given was that the claimant was on vacation or was away for a short period of time around the filing deadline are disallowed unless the explanation indicates that the claimant was away for an extended period of time.

■■■ I also recommend that the following categories of claims be allowed since the reasons involve factors beyond the control of the claimant: (a) claims filed late because of a mistake in the mails or computer error (e.g., #20244, 20264, 20276 and 20290); (b) claims where it is alleged that the claim was filed on time but somehow lost (e.g., #20347, 20348, 20362 and 20363); (c) medical reasons (e.g., #20238, 20240, 20357 and 20394); (d) extenuating personal or business circumstances (e.g., #20245 and 20377); and (e) difficulty in obtaining documentation or other information from third parties (e.g., #20289, 20328).

■■■ Finally, I recommend that certain late claims be allowed where a combination of the above circumstances, including late notice, relocation, and difficulty in obtaining documentation, demonstrates that the claimant "set in motion" whatever was necessary to complete a proof of claim promptly after receipt of notice (e.g., #20388, 20231–20234, and 20293). *Cf. In re Gypsum*, 565 F.2d at 1128 (showing of efforts made prior to deadline constituted "good cause"). A critical factor in evaluating these explanations is the lateness of the claim—the later the claim, the greater the explanation required.

## CONCLUSION

For the foregoing reasons, I recommend that the late claims be allowed or rejected according to the following schedule attached.

A copy of this Report and Recommendation is being mailed to the parties on this date. Any objections must be filed with the Clerk of the Court, with a copy to the undersigned, by August 28, 1995. Failure to file objections within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

Dated: Brooklyn, New York

August 11, 1995

### SCHEDULE OF ALLOWABLE LATE CLAIMS

| CLAIM NO. | NAME | | | | POSTMARK |
|---|---|---|---|---|---|
| ALLOWED CLAIMS MAILED ON OR BEFORE SEPTEMBER 30, 1993 | | | | | |
| 20001 | HROVATIN | DAVID | R | JUSTINA HROVATIN | 19930826 |
| 20003 | LAI | CHUI | H | | 19930826 |
| 20004 | LILLY | STUART | M | | 19930826 |
| 20005 | PACIFIC GAS & ELECTRIC 3719 | | | METER & CO | 19930826 |
| 20007 | GREEN | KIM | A | | 19930825 |
| 20008 | HOOSTE | EDMUND | A | DOROTHY I HOOSTE | 19930826 |
| 20009 | FARKAS | MICHEAL | | MARIA FARKAS | 19930826 |
| 20010 | FELDMAN | DAVID | | BARBARA FELDMAN | 19930826 |
| 20011 | POPPAS | PHILLIP | H | | 19930826 |
| 20020 | DILIS, JR | PETER | A | ALICE DILIS | 19930826 |
| 20021 | CHEN | TONY | L | | 19930826 |
| 20023 | GLUCK | LISA | | | 19930826 |
| 20024 | C & S/SOVRAN CO UAW EMORY UNIV | | TRUST | | 19930826 |
| 20026 | DANA | ALEC | C | | 19930826 |
| 20032 | SILBERMAN | ART | | | 19930826 |
| 20033 | FOREM | JACK | D | | 19930828 |
| 20034 | ALVINO | DANIEL | W | FLORENCE ALVINO | 19930826 |
| 20036 | GATES | THOMAS | W | | 19930827 |
| 20037 | RADATZ, JR | RICHARD | R | KATHY U RADATZ | 19930826 |
| 20040 | DAUB | CATHERINE | | | 19930826 |
| 20041 | HEALION | MARILYN | RIRA | BEAR STEARNS, CUST | 19930828 |
| 20042 | HEALION | MICHAEL | JIRA | BEAR & STEARNS CO, CUST | 19930828 |
| 20043 | WOOLLACOTT | DALLAS | RIRA | MERRILL LYNCH, CUST | 19930826 |
| 20045 | BROWN, JR | CARLTON | M | VERLAINE S BROWN | 19930827 |

| CLAIM NO. | NAME | | | | POSTMARK |
|---|---|---|---|---|---|
| 20046 | PIOTROWSKI | RAYMOND | P | | 19930827 |
| 20047 | REIS | ANNE | L | | 19930828 |
| 20049 | CAMPBELL | JEFFREY | L | | 19930827 |
| 20050 | AGUILAR | ROBERT | | | |
| 20051 | BARTHOLOMEW | KAREN | A | | 19930826 |
| 20052 | HESSENBRUCH | JOHN | | | 19930826 |
| 20054 | STEIN | PHILIP | | | 19930827 |
| 20056 | FELD | JULIUS | | | 19930827 |
| 20058 | EMERSON | DONALD | LIRA | DEAN WITTER, CUST. | 19930827 |
| 20060 | HUGGINS | CLARENCE | LIRA | CHARLES SCHWAB, CUST | 19930826 |
| 20061 | PERITO | PATRICIA | A | | 19930827 |
| 20062 | KRANS | ADOLFO | | | 19930827 |
| 20063 | LOBELLO | FRANCIS | M | | 19930827 |
| 20065 | COM OF PA STATE EMP SYSTEM | | RETIRE | PNC BANK | 19930826 |
| 20066 | IDS | | TRUST | | 19930826 |
| 20067 | ZDEP | STANLEY | J | | 19930827 |
| 20068 | DEMBSKI | HELEN | G | | 19930826 |
| 20069 | BLAU | ROSE | | FAY BLAU | 19930830 |
| 20070 | NAMM | MICHAEL | | | 19930830 |
| 20071 | PAMANI | ASHOK | | | 19930827 |
| 20072 | BRANDES | LOUIS | | | 19930826 |
| 20073 | KHATRI | TULSI | L | | 19930830 |
| 20075 | TANZILLO | JAMES | V | | 19930827 |
| 20076 | MACNEIL | JOHN | HIRA | FIDELITY INVESTMENTS, CUST. | 19930826 |
| 20077 | TIERNAN | JAMES | F | | 19930831 |
| 20078 | HOLT | CAROLYN | V | | 19930830 |
| 20080 | MICHAELS | CHARLOTTE | | SEYMOUR MICHAELS | 19930831 |
| 20081 | BROCK | HELEN | | | 19930831 |
| 20082 | GREENBAUM | MARTIN | | MARJORIE GREENBAUM | 19930831 |
| 20083 | TAKES | WILLIAM | | MARY TAKES | 19930831 |
| 20084 | GELMAN MONEY PURCHASE PEN PL | | | | 19930901 |
| 20085 | BRADLEY | EUGENE | | EILEEN BRADLEY | 19930831 |
| 20087 | CONNER | HERBERT | J | | 19930830 |
| 20088 | JAUW | MONIQUE | | | 19930830 |
| 20090 | MOY | EDWARD | | | 19930830 |
| 20091 | NUGENT | MARY ELLEN | | | 19930901 |
| 20092 | MARGOLIES | MARC | S | | 19930826 |
| 20094 | ASHE | VICTOR | H | | 19930831 |
| 20095 | TURNER | HERVE | J | | 19930901 |
| 20096 | SLADE | ANDREW | T | | 19930831 |
| 20098 | KOBA ASSOC INC PLAN | | RETIRE | | 19930901 |
| 20099 | ESTEFAN | NABIL | | FADIA E ESTEFAN | 19930831 |
| 20100 | MONTELEONE | JOSEPH | P | | 19930830 |
| 20102 | HUGHES | BARBARA | A | | 19930826 |
| 20103 | CHAWLA | VIRENDRA | K | | 19930831 |
| 20108 | PAVLATOS | BOBBY | | JOYCE PAVLATOS | 19930903 |
| 20110 | FOSTER | MICHAEL | | | 19930901 |
| 20111 | SAUNDERS | HARRY | EIRA | MERRILL LYNCH, CUST | 19930901 |
| 20112 | REITER | DONALD | S | | 19930902 |
| 20113 | GLOMSTAD | GARY | B | KG ENTERPRISES | 19930830 |
| 20114 | WEISER SR. | CHRIS | A | LUCILLE BARNEY | 19930902 |
| 20117 | REMCO AGENCY INC. TRST | | RETIRE | | 19930902 |
| 20118 | NADERY | GARY | G | | |
| 20119 | URSCHEL | CHARLES | J | ELISABETH H. URSCHEL | 19930901 |
| 20121 | CAMPANELLA JR. | JOSEPH | A | | 19930901 |
| 20122 | LAGAIPA | FRANK | | | 19930903 |
| 20123 | DEAN | ROBERT | IRA | | 19930902 |
| 20124 | HABER | IKE | | | 19930902 |
| 20126 | POLAK | SHLOMO | | | 19930903 |
| 20128 | DUCHESNEAN | LUC | | | 19930906 |
| 20130 | RINEHART | KENNETH | L | | 19930904 |
| 20131 | KANTOR | LEE | | | 19930904 |
| 20133 | BARNETT | GLENN | | | 19930830 |
| 20134 | MILELLI | MARIO | M | | 19930907 |
| 20136 | JOHNSTON | EDWARD | VESTATE | | 19930903 |
| 20137 | KACZAK | ROBERT | | JACQUELINE KACZAK | 19930907 |
| 20140 | SCHAUMAN | RICHARD | CUST | KIMBERLY SCHAUMAN | 19930908 |
| 20141 | SCHAUMAN | RICHARD | CUST | TODD L. SCHAUMAN | 19930908 |

| CLAIM NO. | NAME | | | | POSTMARK |
|---|---|---|---|---|---|
| 20142 | CZEIZLER | ALAN | R | GAYLE L. CZEIZLER | 19930908 |
| 20143 | CHENG | KEITH | CCUST | ANTHONY M. CHENG | 19930909 |
| 20144 | IRIZARRY | HECTOR | | | 19930905 |
| 20145 | BERNARDO | FELIX | | | 19930908 |
| 20146 | SILVERMAN | ROY | | EILEEN HATTON | 19930908 |
| 20150 | STAR INDUSTRIES | | | MD SASS INVESTORS SVCS, IN | |
| 20151 | BEACON LOOMS PENSION | | TRUST | MD SASS INVESTORS SVCS INC | 19930913 |
| 20152 | SADINOFF | JONATHAN | | MD SASS INVESTORS SVCS INC | 19930913 |
| 20153 | SADINOFF | DANIEL | | SASS INVESTORS SVCS INC | 19930913 |
| 20154 | ASBESTOS WKERS LOCAL 32 PEN FD | | | MD SASS INVESTORS SVCS INC | 19930913 |
| 20157 | WHITE | WILLIAM | P | MD SASS INVESTORS SVCS INC | 19930913 |
| 20159 | KILBERG | SELMA | TRUST | MD SASS INVESTORS SVCS INC | 19930913 |
| 20160 | KILBERG | SELMA | F | MD SASS INVESTORS SCVS INC | 19930913 |
| 20161 | BOILERMAKERS–LOCAL 28 PENSION | | | MD SASS ASSOCIATES INC. | 19930913 |
| 20164 | KILBERG | THOMAS | | MD SASS INVESTORS SVCS INC | 19930913 |
| 20165 | BOILERMAKERS–LOCAL 28 WELFARE | | | MD SASS ASSOCIATES INC. | 19930913 |
| 20167 | WHITE | JEAN | W | MD SASS INVESTORS SCVS INC | 19930913 |
| 20168 | SADINOFF | KENNETH | | MD SASS INVESTORS SCVS INC | 19930913 |
| 20169 | KILBERG | JANE | | MD SASS INVESTORS SCVS INC | 19930913 |
| 20170 | KILBERG | JAMES | | MD SASS INVESTORS SCVS INC | 19930913 |
| 20173 | SADINOFF CHILDREN | | | M.D. SASS INVESTORS SERVICES | 19930913 |
| 20174 | GRUTMAN | KENNETH | L | | 19930911 |
| 20175 | COOPER | CHRIS | | | 19930910 |
| 20176 | PARIS | MARVIN | | VIRGINIA PARIS | 19930909 |
| 20178 | BACHI | JOSEPH | | BEATRICE BACHI | 19930913 |
| 20180 | WOOD | RONALD | L | ROBERTA A. WOOD | 19930910 |
| 20181 | KOPPELMAN | MURRAY | | | 19930910 |
| 20183 | SOCIETY NAT. BK SUCR BY MERGER | | | AMERITRUST TTEE FOR ALLTEL COR | 19930914 |
| 20184 | SOCIETY NAT BK SUCC BY MERGER | | | AMERITRUST TTEE FOR NACCO IND | 19930914 |
| 20185 | SOCIETY NATL BK SUCC BY MERGER | | | AMERITRUST TTEE FOR LEASEWAY | 19930908 |
| 20186 | SOCIETY NAT. BK SUCC BY MERGER | | | AMERTRUST TTEE U/A/W | 19930908 |
| 20188 | SOCIETY NAT. BK SUCC BY MERGER | | | AMERITRUST FIDUCIARY OF PERSON | 19930908 |
| 20189 | SOCIETY NAT. BK SUCC BY MERGER | | | AMERITRUST FIDUCIARY FOR | 19930908 |
| 20190 | SOCIETY NAT BK SUCC BY MERGER | | | AMERITRUST CUST FOR NAT. HEALT | 19930908 |
| 20192 | BARAGLIA | THEODORE | | | 19930908 |
| 20193 | KOZUCH | STEPHEN | | | 19930913 |
| 20194 | WALKER | MARY ELLA | | | 19930913 |
| 20196 | DOMIAN | SIDNEY | L | | 19930910 |
| 20199 | POWELL | DENNIS | | | 19930914 |
| 20201 | PERRETTA | LAWRENCE | | ROSEMARIE T PERRETTA | 19930915 |
| 20202 | TSAI | ERIC | P | | 19930914 |
| 20203 | SALVANI | KATHLEEN | | | 19930916 |
| 20205 | REPPUCCI | BARBARA | | | |
| 20206 | TEBELE | CHARLES | | | 19930914 |
| 20207 | SKENAZY | LEMORE | VIRA | CHARLES SCHWAB, CUST | 19930915 |
| 20208 | CASTRO | CLAUDE | | ELSA D HAFT TIC | 19930915 |
| 20210 | PULVERMACHER | ARCHIE | R | | 19930903 |
| 20211 | CONNELLY | JAMES | | | 19930909 |
| 20212 | NASSIMI | ALBERT | | | |
| 20213 | CASOLARI | BRUNO | D | | 19930920 |
| 20215 | WHITMAN | ROBERT | S | | 19930921 |
| 20216 | GADZINSKI | CHRISTINE | | | 19930922 |
| 20218 | KOSBERG | SARANNE | | | 19930927 |
| 20220 | ROSS | LAURENCE | J | | 19930928 |
| 20221 | KABBANI | FALAK | | | 19930920 |
| 20222 | MOUNAJED | RHAGDA | | | 19930923 |
| 20223 | PARRELLA | MICHAEL | J | | 19930927 |
| 20226 | HUDAK | THOMAS | F | DOROTHY A HUDAK | 19930920 |
| 20235 | SHERMA M.D. | KAMLESH | K | | 19930917 |
| 20239 | SILVERMAN | JOYCE | | IRVING SILVERMAN | 19930918 |
| 20344 | EFFECTENBELFGGING BV | ENNIA | | | 19930923 |
| 20263 | PAPASTAMATIKS | JOHN | | HARRIETT PAPASTAMATIKS | 19930824 |
| 20264 | LEBOFF | SHELLEY | | | 19930902 |
| 20313 | DEAN | ROBERT | | | 19930902 |
| 20332 | CAMPBELL | JEFFREY | LIRA | FAHNESTOCK & CO., CUST. | 19930827 |
| 20368 | DENICKER | WARREN | | | 19930907 |
| 20372 | STASSI | JAMES | TRUST | LYNN E. BARBATO | 19930908 |
| 20374 | STASSI | JAMES | | | 19930908 |

| CLAIM NO. | NAME | | | | POSTMARK |
|---|---|---|---|---|---|
| 20379 | EMERSON | DONALD | L | | 19930827 |
| 20382 | FOGEL | ROBERT | A | DEPT OF MINERAL SCIENCES | 19930826 |

CLAIMS ALLOWED DUE TO LACK OF NOTICE

| CLAIM NO. | NAME | | | | POSTMARK |
|---|---|---|---|---|---|
| 20237 | REUNIS | RICHARD | E | JACQUELINE REUNIS | 19931004 |
| 20242 | FORMAN | DARRYL | | | 19931005 |
| 20243 | ELLIOTT | MICHAEL | W | DEBBIE S. ELLIOTT | 19931011 |
| 20271 | SALIS | HERBERT | N | SANDRA SALIS | 19931022 |
| 20279 | SALIS | LAURA | | HEIDI SALIS | 19931027 |
| 20292 | WEINBERG | LENA | | | 19931102 |
| 20296 | TANZLER | CLIFFORD | E | | 19931008 |
| 20307 | ROTROSEN | SAMUEL | | | 19931110 |
| 20322 | WAXMAN | JOANNE | LIRA | MOORE & SCHULEY, CUST | 19931210 |
| 20323 | LIVINGSTON | PHILIP | | | 19931210 |
| 20350 | THARANI | SHERIE | CUST | QOMIL THARANI | 19931130 |
| 20353 | PAGE | REGINA | M | RICHARD C PAGE | 19940211 |
| 20355 | WANG | TIEN | S | LOUISE L LI | 19940219 |
| 20356 | LI | LOUISE | | JEN FU WANG | 19940219 |
| 20378 | DENNEHY | MARY | EIRA | A G EDWARDS, CUST. | 19940414 |
| 20380 | HICKSON | BILL | | | 19940503 |
| 20381 | WILMAR ASSOC, INC. | | | H.S. DIE & ENGRL SALES INC. | 19940503 |
| 20282 | CHUNG | ANTHONY | | | 19931028 |
| 20383 | SILPE | DONALD | | LINDA SILPE | 19940513 |
| 20387 | WEBER | RICHARD | E | | 19940513 |
| 20389 | CAPPUCCIO | TONI | A | | 19940503 |
| 20390 | DUBITSKY | DOUG | | | 19940510 |
| 20392 | HEMPHILL | JANE | M | | 19940512 |
| 20393 | HEMPHILL | JUDITH | L | | 19940520 |
| 20401 | SALTZMAN | HERBERT | TRUST | FIRST TRUST NUEP., TTEE | 19940622 |
| 20402 | BOGERT | TRUDY | T | | 19940615 |
| 20403 | MYERSON | PAUL | A | | 19940624 |
| 20404 | ORLANDO | JOHN | | | 19940624 |
| 20411 | PERLOW | VALERIE | | | 19940719 |